ARTHUR J. ROCQUE, COMMISSIONER OF
ENVIRONMENTAL PROTECTION *v.*
TIMOTHY MELLON ET AL.
(SC 17281)

Sullivan, C. J., and Borden, Norcott, Palmer and Zarella, Js.

Argued April 14—officially released August 30, 2005

*John R. Bashaw*, for the appellants-appellees (named defendant et al.).

*Janet P. Brooks* and *David H. Wrinn*, assistant attorneys general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellee-appellant (plaintiff).

*Opinion*

SULLIVAN, C. J. This appeal arises out of a complaint filed by the plaintiff, Arthur J. Rocque, the commissioner of environmental protection (commissioner), against the defendants, Timothy Mellon, Goodspeed Airport, LLC (airport), the East Haddam Land Trust (land trust) and the Nature Conservancy (conservancy). The commissioner alleged that Mellon and the airport (collectively, airport defendants) violated General Statutes § 22a-16[1] of the Connecticut Environmental Protection Act (act) by cutting down trees and other

---

[1] General Statutes § 22a-16 provides: "The Attorney General, any political subdivision of the state, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity may maintain an action in the superior court for the judicial district wherein the defendant is located, resides or conducts business, except that where the state is the defendant, such action shall be brought in the judicial district of Hartford, for declaratory and equitable relief against the state, any political subdivision thereof, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity, acting alone, or in combination with others, for the protection of the public trust in the air, water and other natural resources of the state from unreasonable pollution, impairment or destruction provided no such action shall be maintained against the state for pollution of real property acquired by the state under subsection (e) of section 22a-133m, where the spill or discharge which caused the pollution occurred prior to the acquisition of the property by the state."

vegetation on two properties owned, respectively, by the land trust and the conservancy (collectively, land trust defendants). After a trial to the court,[2] the court rendered judgment for the airport defendants on count one of the complaint alleging unreasonable impairment of wetlands and watercourses in violation of § 22a-16, and for the commissioner on count three of the complaint alleging unreasonable impairment and destruction of floodplain forest in violation of § 22a-16.[3] The airport defendants appealed[4] and the commissioner cross appealed. We conclude that the trial court improperly rendered judgment for the airport defendants on count one of the commissioner's complaint. We affirm the judgment of the trial court in all other respects.

The record reveals the following relevant facts and procedural history. The airport is located on Lumberyard Road in East Haddam. It is an "[a]irport available for public use" within the meaning of title 14 of the Code of Federal Regulations, § 77.2.[5] Mellon is the sole member of Goodspeed Airport, LLC. The airport's southern boundary lies approximately along the centerline of a tidal creek that flows in a westerly direction into the Connecticut River. That boundary forms the northern boundary of property owned by the land trust, which extends for approximately 335 feet to the south,

---

[2] The case was tried jointly with an action brought by the inland wetlands and watercourses commission of the town of East Haddam and its enforcement officer, James Ventres, against Mellon, the Goodspeed Airport, LLC, and Timothy Evans. The trial court's ruling in that case is the subject of the airport defendants' appeal in the companion case of *Ventres* v. *Goodspeed Airport, LLC*, 275 Conn. 105, 881 A.2d 937 (2005).

[3] The commissioner withdrew count two of the complaint, which alleged a violation of General Statutes § 22a-42a (c) (1).

[4] The airport defendants appealed to the Appellate Court and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[5] Title 14 of the Code of Federal Regulations, § 77.2 defines an "[a]irport available for public use" as "an airport that is open to the general public with or without a prior request to use the airport."

where it abuts property owned by the conservancy. The conservancy's property extends for another 100 feet to the south, at which point it abuts Chapman Pond. The airport has a 2100 foot runway that runs in a north-south direction. The southern end of the runway is approximately 630 feet north of the airport's southern boundary and 1100 feet north of Chapman Pond.

Between November 29, 2000, and December 5, 2000, Timothy Evans, an independent contractor and the manager of the airport since November, 2003, cut down all of the trees, bushes and woody vegetation on approximately 2.5 acres of land located between the southern boundary of the airport property and Chapman Pond. Evans cut the vegetation at the direction of Mellon and without the permission of the land trust defendants. Approximately 340 trees were destroyed, including some that were 100 years old and seventy-two feet high. The airport defendants claim that the trees and vegetation posed a danger to aircraft landing at and taking off from the runway. The 2.5 acres were entirely within a regulated wetlands area as defined by General Statutes § 22a-38 (15)[6] and were part of a wildlife refuge and nature preserve that extends along the Connecticut River.

Thereafter, the commissioner brought this action alleging that the airport defendants violated the act by cutting the trees and vegetation. In count one of the complaint, the commissioner alleged that "[b]y clear cutting trees on the properties of the [land trust defendants] . . . without a permit issued under the Inland Wetlands and Watercourses Act, [General Statutes

---

[6] General Statutes § 22a-38 (15) defines " '[w]etlands' " as "land, including submerged land, not regulated pursuant to sections 22a-28 to 22a-35, inclusive, which consists of any of the soil types designated as poorly drained, very poorly drained, alluvial, and floodplain by the National Cooperative Soils Survey, as may be amended from time to time, of the Natural Resources Conservation Service of the United States Department of Agriculture . . . ."

§ 22a-28 et seq.] the [airport defendants] unreasonably impaired wetlands and watercourses, natural resources of the State of Connecticut, and the public trust therein." In count three of the complaint, the commissioner alleged that "[b]y clear cutting trees on the properties of the [land trust defendants] . . . the [airport defendants] unreasonably impair[ed] or destroyed approximately four acres of floodplain forest, a natural resource of the State of Connecticut, and the public trust therein." The airport defendants raised numerous special defenses to the commissioner's complaint, including a claim that the plaintiff's action was preempted by federal aviation law. After a trial to the court, the court rendered judgment for the airport defendants on count one of the complaint on the ground that the failure to obtain a necessary environmental permit cannot form the basis for a claim under the act. The court rejected the airport defendants' preemption claim and rendered judgment for the commissioner on the third count of the complaint. This appeal and cross appeal followed.

On appeal, the airport defendants claim that the trial court: (1) improperly determined that the act is not preempted by federal aviation law; (2) should have rendered judgment for them on count three of the complaint for the same reasons that it rendered judgment for them on count one; (3) improperly determined that the removal of vegetation from the properties was a regulated activity under the inland wetlands and watercourses act; and (4) improperly determined that Mellon was personally liable for cutting the trees. The commissioner claims on cross appeal that the trial court improperly rendered judgment for the airport defendants on count one of its complaint because the claim was primarily directed to the polluting activity itself and not to the failure to obtain a permit. In the companion case of *Ventres* v. *Goodspeed Airport, LLC*, 275

Conn. 105, 881 A.2d 937 (2005), we rejected claims identical to the airport defendants' first, third and fourth claims in the present case. We adopt the reasoning and conclusions of that case herein. We agree with the commissioner's claim on cross appeal that the trial court improperly rendered judgment for the airport defendants on count one of its complaint and, for the same reasons, we reject the airport defendants' second claim on appeal.

Because our resolution of the commissioner's claim on cross appeal guides our resolution of the airport defendants' sole remaining claim on appeal, we first address that issue. The commissioner alleged in count one of its complaint that "[b]y clear cutting trees on the properties of the [land trust defendants] . . . without a permit issued under the Inland Wetlands and Water-courses Act, the [airport defendants] unreasonably impaired wetlands and watercourses, natural resources of the State of Connecticut, and the public trust therein." The trial court, citing this court's decision in *Connecticut Coalition Against Millstone* v. *Rocque*, 267 Conn. 116, 138–48, 836 A.2d 414 (2003), concluded that "the failure to obtain a license or permit to engage in conduct which impinges on the environment cannot form the basis for a . . . claim under § 22a-16." In support of its claim on cross appeal, the commissioner argues that count one of the complaint is not foreclosed by *Connecticut Coalition Against Millstone* because he did not allege that the airport defendants' failure to obtain a permit violated § 22a-16, but that the clear-cutting itself constituted unreasonable pollution.

The commissioner's claim implicates its standing to raise a claim under § 22a-16 and, therefore, implicates the trial court's subject matter jurisdiction over the claim. See id., 127–28. "A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of

law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) Id.

In *Connecticut Coalition Against Millstone* v. *Rocque*, supra, 267 Conn. 116–18, 134, the plaintiffs, environmental activists, claimed that the Millstone Nuclear Power Generating Station should be enjoined from operating because it was functioning under an improperly issued permit. We determined that "[a]llegations of improper decisions by the commissioner for failure to comply with the statutory requirements regarding permit renewal proceedings and emergency authorizations cannot be construed as anything other than a licensing claim under [General Statutes] § 22a-430." Id., 134. Relying on a long series of cases in which we had held that § 22a-16 does not confer standing to litigate permitting decisions that are within the exclusive jurisdiction of a state agency, we concluded that the trial court properly had dismissed the plaintiffs' claims. Id., 129–38. In doing so, we distinguished other cases in which we had determined that the plaintiffs had standing under § 22a-16 because, although the lack of an appropriate permit had been alleged, the plaintiffs had raised independent "claims of unreasonable pollution [that] were directed primarily to the polluting activity itself, and not . . . to the validity of an existing permit or authorization . . . ." Id., 139–40, citing *Keeney* v. *Old Saybrook*, 237 Conn. 135, 140–41, 676 A.2d 795 (1996) (alleging unreasonable pollution of state waters from town's failure to comply with pollution abatement orders); *Commissioner of Environmental Protection* v. *Connecticut Building. Wrecking Co.*, 227 Conn. 175, 190, 629 A.2d 1116 (1993) (alleging unreasonable pollution from failure to obtain permit for operation of solid waste facility that generated leachate, which degraded groundwater); *Keeney* v. *L & S Con-*

*struction*, 226 Conn. 205, 209, 626 A.2d 1299 (1993) (alleging unreasonable pollution from depositing construction debris in close proximity to area water supply without permit).

We conclude that count one of the commissioner's complaint in the present case falls into the category of the cases that we distinguished in *Connecticut Coalition Against Millstone*. The commissioner did not claim that the airport defendants' failure to obtain a wetlands permit constituted a violation of § 22a-16; he claimed that clear-cutting the trees constituted unreasonable pollution. Accordingly, we conclude that the commissioner had standing to make this claim and, therefore, that the trial court improperly rendered judgment for the airport defendants.

Because the trial court concluded that the claim was barred by *Connecticut Coalition Against Millstone* v. *Rocque*, supra, 267 Conn. 116, it did not reach the issue of whether the conduct alleged in count one of the complaint constituted unreasonable pollution under § 22a-16. We address the question in the interest of judicial efficiency and to avoid the potential for inconsistent verdicts. In *Waterbury* v. *Washington*, 260 Conn. 506, 557, 800 A.2d 1102 (2002), we held that "when there is an environmental legislative and regulatory scheme in place that specifically governs the conduct that the plaintiff claims constitutes an unreasonable impairment under [§ 22a-16], whether the conduct is unreasonable under [§ 22a-16] will depend on whether it complies with that scheme." We concluded in *Ventres* v. *Goodspeed Airport, LLC*, supra, 275 Conn. 132, that in the absence of any property right that would have entitled the airport defendants to apply for a wetlands permit to clear-cut the properties, their activities necessarily would not have been permitted. Therefore, we concluded that the trial court properly determined that the conduct alleged by the land trust defendants was unreasonable. See id., 135–37 and n.29 (concluding

that trial court properly rendered judgment for land trust defendants on cross claim pursuant to § 22a-16). It necessarily follows that the conduct alleged in count one of the commissioner's complaint constituted an unreasonable destruction of the wetlands. Accordingly, we conclude that the trial court should have rendered judgment for the commissioner on this claim.[7]

For the same reasons, we reject the airport defendants' claim on appeal that the trial court improperly rendered judgment for the commissioner on the third count of its complaint. The commissioner made no claim that the airport defendants' failure to obtain a permit to destroy the floodplain forest violated § 22a-16. Indeed, count three makes no reference to any need for a permit. Instead, the claim was "directed primarily to the polluting activity itself . . . ." *Connecticut Coalition Against Millstone* v. *Rocque*, supra, 267 Conn. 139. Accordingly, we conclude that the trial court properly rejected the airport defendants' claim that the land

[7] On remand, the trial court will be required to determine whether count one of the commissioner's complaint was duplicative of count three for purposes of issuing orders pursuant to General Statutes § 22a-16a or whether the commissioner is entitled to additional orders under count one.

General Statutes § 22a-16a provides in relevant part: "In any action brought by the Attorney General under section 22a-16 or under any provision of this title which provides for a civil or criminal penalty for a violation of such provision, the court, in lieu of any other penalties, damages or costs awarded, or in addition to a reduced penalty, damages or costs awarded, may order the defendant (1) to provide for the restoration of any natural resource or the investigation, remediation or mitigation of any environmental pollution on or at any real property which resource or property are unrelated to such action, (2) to provide for any other project approved by the Commissioner of Environmental Protection for the enhancement of environmental protection or conservation of natural resources, (3) to make a financial contribution to an academic or government-funded research project related to environmental protection or conservation of natural resources, or (4) to make a financial contribution to the Special Contaminated Property Remediation and Insurance Fund established under section 22a-133t provided the total aggregate amount of all contributions to said fund under this section shall not exceed one million dollars per fiscal year. . . ."

trust defendants lacked standing to make this claim and properly rendered judgment in favor of the commissioner.

On the plaintiff's cross appeal, the judgment is reversed in part and the case is remanded to the trial court with direction to render judgment for the plaintiff on count one of the complaint and for further proceedings to determine whether additional orders should be issued pursuant to General Statutes § 22a-16a under that count. The judgment is affirmed in all other respects.

In this opinion the other justices concurred.