******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* ANTHONY ADAMS
(AC 40946)

Elgo, Bright and Sullivan, Js.

*Syllabus*

The defendant, who had been convicted, on a guilty plea, of two counts of
the crime of hindering prosecution in the second degree, appealed to
this court from the trial court's denial of his motions to correct an illegal
sentence and for procedural default. *Held:*

1. The defendant waived his claim that his sentence on the two hindering
prosecution counts violated the prohibition against double jeopardy, as
he pleaded guilty to both counts of hindering prosecution and did not
dispute that his plea was made voluntarily and intelligently, which oper-
ated as a waiver of all nonjurisdictional defects and a relinquishment of
his double jeopardy claim, especially given that the charging documents
revealed no facial violation of the prohibition against double jeopardy.

2. The defendant's claim that the trial court improperly concluded that his
sentence did not exceed the statutory maximum was unavailing; the
defendant's sentence plainly comported with maximum terms specified
in the relevant statutes (§§ 53a-35a [7] and 53a-29 [e]), and the trial
court properly concluded that a period of probation is not part of the
calculation of a maximum definite sentence under § 53a-35a.

3. The trial court properly denied the defendant's motion for procedural
default; the defendant provided no authority to substantiate his claim
that the state was obligated to respond in writing to his motion to
correct, as nothing in the rules of practice or decisional law required
the state to file a written response to the defendant's motion to correct
an illegal sentence, and the rule of practice (§ 66-2) relied on by the
defendant in his motion for procedural default applies to appellate
motions practice and was inapplicable to the defendant's motion to
correct an illegal sentence.

4. The defendant could not prevail on his unpreserved claim of judicial bias;
absent plain error, a claim of judicial bias cannot be reviewed on appeal
unless preserved in the trial court, the defendant neither requested
review nor briefed a claim pursuant to the plain error doctrine, and
even if he had sought review pursuant to the plain error doctrine, he
could not prevail under that doctrine because the record demonstrated
that his allegation was wholly unfounded, as the defendant, at a hearing
on his motions to correct and for procedural default, made multiple
misstatements of law, and the trial court's explanations in response to
the defendant's misstatements were entirely proper and did not evince
any impartiality on the part of the court.

Argued September 24—officially released November 13, 2018

*Procedural History*

Substitute information charging the defendant with
the crimes of felony murder and attempt to commit
robbery in the first degree, and with two counts of the
crime of hindering prosecution in the second degree,
brought to the Superior Court in the judicial district of
Ansonia-Milford, where the defendant was presented
to the court, *Iannotti, J.*, on a guilty plea to two counts
of hindering proseuction in the second degree; judg-
ment of guilty in accordance with the plea; subse-
quently, the court denied the defendant's motions to
correct an illegal sentence and for procedural default,
and the defendant appealed to this court. *Affirmed.*

*Anthony Adams*, self-represented, the appellant
(defendant).

*Laurie N. Feldman*, special deputy assistant state's attorney, with whom, on the brief, were *Kevin D. Lawlor*, state's attorney, and *Cornelius P. Kelly*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

ELGO, J. The self-represented defendant, Anthony Adams, appeals from the judgment of the trial court denying his postsentencing motions to correct an illegal sentence and for procedural default. On appeal, the defendant claims that the court improperly (1) rejected his double jeopardy challenge to his sentence for two counts of hindering prosecution in the second degree in violation of General Statutes § 53a-166, (2) concluded that his sentence did not exceed the statutory maximum, (3) denied his motion for procedural default, and (4) advocated on behalf of the state at the hearing on his motions. We affirm the judgment of the trial court.

On October 28, 2012, Daquane Adams and Eugene Walker were involved in a drug deal that culminated with the fatal shooting of the victim, Neville Malacai Registe. See *State* v. *Walker*, 180 Conn. App. 291, 296–97, 183 A.3d 1, cert. granted, 328 Conn. 934, 183 A.3d 634 (2018). After fleeing the scene, Adams and Walker telephoned the defendant. The defendant then placed a telephone call to a friend and had her pick up Adams and Walker from their location in New Haven.

On August 18, 2016, the defendant was charged, by substitute information, with one count of felony murder in violation of General Statutes § 53a-54c, one count of attempt to commit robbery in the first degree in violation of General Statutes §§ 53a-8, 53a-49 (a) (2) and 53a-134 (a) (2), and two counts of hindering prosecution in the second degree in violation of § 53a-166. The defendant thereafter entered a guilty plea to two counts of hindering prosecution in the second degree.[1] In accordance with the terms of that plea, the court sentenced the defendant to consecutive terms of seven and one-half years incarceration, execution suspended after five years, with five years of probation. His total effective sentence on the two hindering prosecution counts was fifteen years incarceration, execution suspended after ten years, with five years of probation.

Months later, the defendant filed a motion to correct an illegal sentence, claiming that his sentence exceeded the statutory maximum and violated the prohibition against double jeopardy.[2] The defendant later filed a motion for procedural default predicated on the state's failure to file a written response to his motion to correct. The court held a hearing on the defendant's motions on July 26, 2017, at which it denied both motions. From that judgment, the defendant now appeals.

I

The defendant first claims that the court improperly rejected his double jeopardy challenge to his sentence on the two hindering prosecution counts. In response, the state argues that the defendant waived that claim by pleading guilty to those counts. We agree with the state.

The double jeopardy clause of the fifth amendment to the United States constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb . . . ."[3] That constitutional provision is applicable to the states through the due process clause of the fourteenth amendment. *Benton* v. *Maryland*, 395 U.S. 784, 794, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969). An alleged double jeopardy violation is a proper basis for a motion to correct an illegal sentence. See *State* v. *Wade*, 178 Conn. App. 459, 466, 175 A.3d 1284 (2017), cert. denied, 327 Conn. 1002, 176 A.3d 1194 (2018).

It nevertheless remains that the defendant pleaded guilty to the two counts in question and in this appeal does not dispute that his plea was voluntarily and intelligently made. See footnote 1 of this opinion. Our Supreme Court has observed that "[a]s a general rule, an unconditional plea of guilty . . . intelligently and voluntarily made, operates as a waiver of all nonjurisdictional defects and bars the later assertion of constitutional challenges to pretrial proceedings. . . . Therefore, only those issues fully disclosed in the record which relate either to the exercise of jurisdiction . . . by the court or to the voluntary and intelligent nature of the plea are ordinarily appealable after a plea of guilty . . . ." (Citations omitted; emphasis omitted; footnotes omitted.) *State* v. *Madera*, 198 Conn. 92, 97–98, 503 A.2d 136 (1985).

The United States Supreme Court, in addressing the viability of a double jeopardy challenge following a guilty plea, has explained that "[j]ust as a defendant who pleads guilty to a single count admits guilt to the specified offense, so too does a defendant who pleads guilty to two counts with facial allegations of distinct offenses concede that he has committed two separate crimes." *United States* v. *Broce*, 488 U.S. 563, 570, 109 S. Ct. 757, 102 L. Ed. 2d 927 (1989). In that case, the court emphasized that the defendants "had the opportunity, instead of entering their guilty pleas, to challenge the theory of the indictments . . . . They chose not to, and hence relinquished that entitlement." Id., 571. Relinquishment of a double jeopardy claim, the court continued, "derives not from any inquiry into a defendant's subjective understanding of the range of potential defenses, but from the admissions necessarily made upon entry of a voluntary plea of guilty." Id., 573–74; accord *United States* v. *Burroughs*, 691 Fed. Appx. 31, 33 (2d Cir. 2017) (defendant's "valid guilty plea . . . constitutes a waiver of his double jeopardy claim"). The Supreme Court thus held that, unless a double jeopardy violation is apparent on the face of the charging documents, a defendant's ability to raise such a challenge "is foreclosed by the admissions inherent" in his or her guilty plea. *United States* v. *Broce*, supra, 575–76.

Examination of the operative charging document in the present case reveals no facial violation of the prohibition against double jeopardy. The August 18, 2016 substitute information contains four counts, the latter two of which allege hindering prosecution in the second degree in violation of § 53a-166.[4] The third count alleges in relevant part that the defendant "rendered criminal assistance to [Adams], by way of providing him with transportation and . . . [Adams] had committed a Class B felony . . . ." The fourth count alleged in relevant part that the defendant "rendered criminal assistance to [Walker], by way of providing him with transportation and . . . [Walker] had committed a Class A felony . . . ." Judged solely on its face, as our law requires; *United States* v. *Broce*, supra, 488 U.S. 575–76; we perceive no double jeopardy violation. Accordingly, the defendant waived his double jeopardy claim by entering his guilty plea in the present case.

## II

The defendant next claims that the court improperly concluded that his sentence did not exceed the statutory maximum. That contention is a proper basis for a motion to correct an illegal sentence pursuant to Practice Book § 43-22; see *State* v. *Lawrence*, 281 Conn. 147, 155–56, 913 A.2d 428 (2007); and one over which our review is plenary. *State* v. *Mungroo*, 104 Conn. App. 668, 684, 935 A.2d 229 (2007), cert. denied, 285 Conn. 908, 942 A.2d 415 (2008).

The offense in question, hindering prosecution in the second degree, is a class C felony. General Statutes § 53a-166 (b). The maximum term of imprisonment for a class C felony is ten years. General Statutes § 53a-35a (7). Likewise, the maximum period of probation for a class C felony is five years. General Statutes § 53a-29 (e). In the present case, the court sentenced the defendant to consecutive terms of seven and one-half years incarceration, execution suspended after five years, with five years of probation for each hindering prosecution count, which resulted in a total effective sentence of fifteen years incarceration, execution suspended after ten years, with five years of probation. That sentence plainly comports with the maximum terms specified in §§ 53a-35a (7) and 53a-29 (e).

The defendant nonetheless posits that his period of probation must be included in the calculation of his maximum definite sentence under § 53a-35a. He has provided no legal authority to support that assertion. Moreover, this court recently rejected an identical claim. In *State* v. *Lugojanu*, 184 Conn. App. 576, 580,    A.3d    (2018), the defendant argued "that his sentence was illegal because it exceeded the statutory limit for a class B felony. Specifically, the defendant claim[ed] that a twenty year sentence of imprisonment followed by a five year term of probation effectively

constitutes a twenty-five year sentence [and] thus exceeds" the statutory maximum set forth in § 53a-35a. This court disagreed, stating: "Absent a statutory prohibition, a term of imprisonment with the execution of such sentence of imprisonment suspended after a period set by the court and a period of probation is an authorized sentence. . . . The plain language of the statute concerning authorized sentences . . . specifies that a defendant can be sentenced to a term of imprisonment, but have that sentence suspended while he serves a period of probation. . . . In the present case, the defendant's maximum exposure to imprisonment under such a sentence is twenty, not twenty-five, years. Moreover, § 53a-35a expressly states that the *sentence of imprisonment* shall be a definite sentence and . . . the term shall be . . . (1) [f]or a class B felony other than manslaughter in the first degree with a firearm . . . a term not less than one year nor more than twenty years . . . . Furthermore, the statute concerning periods of probation, [§] 53a-29 (d), expressly states that the *period of probation* . . . (1) [f]or a class B felony, [shall be] not more than five years. . . . The defendant's sentence does not violate any of these provisions." (Citations omitted; emphasis in original; footnote omitted; internal quotation marks omitted.) Id., 580–81. The court thus held that a period of probation is not part of the calculation of a maximum definite sentence under § 53a-35a. Id.

That precedent is dispositive of the defendant's claim. The trial court, therefore, properly denied the defendant's motion to correct an illegal sentence.

### III

The defendant contends that the court improperly denied his motion for procedural default. We disagree.

The following additional facts are relevant to this claim. The defendant was sentenced in accordance with the terms of his guilty plea on February 7, 2017. On May 17, 2017, he filed a motion to correct an illegal sentence with the trial court. When the state did not file a written response to that motion, the defendant filed a motion for procedural default on June 27, 2017. In that motion, the defendant alleged that the state had failed to comply with Practice Book §§ "10, 11, and 66." The defendant then quoted from Practice Book § 66-2, which provides that "[a] party intending to oppose a motion, petition or application shall file a brief statement clearly setting forth in separate paragraphs appropriately captioned the factual and legal grounds for opposition within ten days after the filing of the motion . . . ." (Emphasis omitted.) Because the state had not filed a written response to his motion to correct, the defendant claimed that the state had "waived and forfeited [its] right be heard . . . in this matter." The defendant thus submitted that "[t]he [s]tate's acquiescence permits my arguments and claims to proceed

unopposed, nullifying any objections."

The court held a hearing on the defendant's motion on July 26, 2017. When the defendant indicated that he was relying on the requirements of Practice Book §§ "10, 11 and 66," the court inquired: "When you say 10 and 11, what do you mean . . . ?" The defendant responded, "Section 10, 11. More specifically, section 66-2." The court at that time apprised the defendant that § 66-2 was a rule "of appellate procedure" and explained that the present proceeding was "not an appellate matter." The court further explained that chapters 10 and 11 of the rules of practice pertained to civil matters. The following colloquy then transpired:

"The Court: [What] you're referring to, Mr. Adams, are procedures in civil matters. This is not a civil matter, sir. . . .

"The Defendant: In civil matters?

"The Court: Yes, sir.

"The Defendant: It's the Connecticut Practice Book. I thought it was all matters—

"The Court: Yes, it is, but there are civil and criminal and appellate [chapters], and you referred to the appellate and to the civil [chapters]; this [proceeding] is neither.

"The Defendant: So it doesn't apply to criminal?

"The Court: Correct.

"The Defendant: All right. So, basically, I file a motion and the state . . . doesn't have to, like, respond to my motion at all?

"The Court: In writing?

"The Defendant: Yeah.

"The Court: No, they are not required to.

"The Defendant: They don't have to acknowledge the motion at all? They can just come in and oppose it?

"The Court: The motion, of course, will be acknowledged in court today. . . . [The state] is prepared to argue your motion.

"The Defendant: All right."

The court then denied the defendant's motion for procedural default, noting that the Practice Book sections relied upon by the defendant did not apply to the present proceeding.

On appeal, the defendant has provided this court with no authority to substantiate his bald assertion that the state was obligated to respond in writing to his motion to correct. Nothing in either our rules of practice or our decisional law requires the state to file a written response to a defendant's motion to correct an illegal sentence. See, e.g., *State* v. *Martin M.*, 143 Conn. App.

140, 151–52, 70 A.3d 135 (reviewing claim raised by state on appeal despite fact that state did not file written response to motion to correct illegal sentence), cert. denied, 309 Conn. 919, 70 A.3d 41 (2013). Moreover, this court recently held that Practice Book § 66-2 "applies to appellate motions practice" and thus is inapplicable to a motion to correct an illegal sentence. *State* v. *Holmes*, 182 Conn. App. 124, 129 n.7, 189 A.3d 151, cert. denied, 330 Conn. 913,        A.3d        (2018). This court further noted that "[t]he Practice Book sections that govern procedure in criminal matters do not contain any time requirements with respect to objections to motions to correct." Id. We reiterate that those sections also do not obligate the state to file a written response to a motion to correct an illegal sentence. The defendant's claim thus fails.

IV

The defendant also assails the court's conduct during the July 26, 2017 hearing on his postsentencing motions. He alleges that the court improperly engaged in advocacy on behalf of the state and "assumed the role of the prosecutor" in responding to his arguments. In so doing, the defendant argues that the court "abused [its] discretion which prejudiced [the defendant] and created an atmosphere of injustice and discouragement."

At no time did the defendant raise those allegations of judicial bias before the trial court. "[I]t is well settled that courts will not review a claim of judicial bias on appeal unless that claim was properly presented to the trial court through a motion for disqualification or a motion for mistrial. . . . Absent plain error, a claim of judicial bias cannot be reviewed on appeal unless preserved in the trial court." (Internal quotation marks omitted.) *Zilkha* v. *Zilkha*, 167 Conn. App. 480, 486, 144 A.3d 447 (2016). On appeal, the defendant has neither requested review nor briefed a claim pursuant to the plain error doctrine. See *Michael G.* v. *Commissioner of Correction*, 153 Conn. App. 556, 562, 102 A.3d 132 (2014) (noting that this court normally declines "to review claims of alleged judicial bias if no claim of plain error was made by a party on appeal"), cert. denied, 315 Conn. 916, 107 A.3d 412 (2015); *State* v. *James R.*, 138 Conn. App. 181, 202, 50 A.3d 936 ("[t]he defendant does not argue that plain error exists and, thus, we do not engage in plain error review"), cert. denied, 307 Conn. 940, 56 A.3d 949 (2012).

Even if the defendant had sought review pursuant to the plain error doctrine, he could not prevail. Our review of the record reveals that the defendant's allegation is wholly unfounded. The transcript of the July 26, 2017 hearing is twenty-eight pages in length and is punctuated by multiple misstatements of law by the defendant. For example, the defendant incorrectly insisted that the offense of hindering prosecution in the second degree was a class D felony, when § 53a-166 plainly specifies

that it is a class C felony.[5] The defendant also incorrectly argued that the calculation of his maximum definite sentence under § 53a-35a must include his period of probation and that our rules of practice obligated the state to file a written response to his motion to correct an illegal sentence. In each instance, the court responded in a measured and respectful manner and carefully explained to the defendant why his assertions were untenable under Connecticut law. Those explanations were entirely proper and do not evince any impartiality on the part of the court. See, e.g., *State* v. *Kelly*, 256 Conn. 23, 70–71, 770 A.2d 908 (2001) ("the trial court did not become an advocate for one of the parties in the case [when it] properly commented on the evidence before it in an attempt to simplify the proceedings"); *Mercer* v. *Cosley*, 110 Conn. App. 283, 293, 955 A.2d 550 (2008) (trial court's statements "merely served to explain the [legal] basis for the court's ruling and [are] not demonstrative of any bias"). The defendant therefore cannot prevail on his unpreserved claim of judicial bias pursuant to the plain error doctrine.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] On appeal, the defendant raises no issue with respect to the validity of his guilty plea. As the defendant states in his appellate brief: "[T]here is no pending appeal challenging the [hindering prosecution] convictions themselves. My appeal here attacks the actions of the sentencing court and not the underlying conviction."

[2] The gist of the defendant's double jeopardy claim was that he could not be convicted of rendering criminal assistance to *both* Adams and Walker by placing a single telephone call to assist them on the night of the shooting. As he argued in his motion to correct, his sentence involved two counts that allegedly derived from a single act in placing that telephone call.

[3] The defendant's double jeopardy claim also was brought pursuant to the protection afforded under our state constitution. That protection "is coextensive with that provided by the constitution of the United States." (Internal quotation marks omitted.) *State* v. *Drakes*, 321 Conn. 857, 865, 146 A.3d 21, cert. denied,     U.S.    , 137 S. Ct. 321, 196 L. Ed. 2d 234 (2016).

[4] General Statutes § 53a-166 provides: "(a) A person is guilty of hindering prosecution in the second degree when such person *renders criminal assistance to another person* who has committed a class A or class B felony or an unclassified felony for which the maximum penalty is imprisonment for more than ten years.

"(b) Hindering prosecution in the second degree is a class C felony." (Emphasis added.)

[5] The defendant presumably was confused by the designation of that offense as a class D felony prior to the revision of § 53a-166 in 2003. At the July 26, 2017 hearing, the court explained to the defendant that "[t]he statute changed in 2003. It used to be a class D felony. The Legislature changed it in 2003, and made it . . . a class C felony. Your offense occurred after 2003, and the statute [at that time defined] hindering prosecution in the second degree [as] a class C felony."