******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* ROOSEVELT DRAKES
(SC 19247)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and
Vertefeuille, Js.

*Argued January 28—officially released July 5, 2016*

*Daniel J. Foster*, assigned counsel, for the appellant (defendant).

*Michael Gailor*, executive assistant state's attorney, with whom, on the brief, was *Gail P. Hardy*, state's attorney, for the appellee (state).

*Opinion*

ESPINOSA, J. This certified appeal requires this court to consider several claims that the defendant, Roosevelt Drakes, raises in regard to General Statutes (Rev. to 2009) § 54-102g,[1] which requires convicted felons in the custody of the Commissioner of Correction to submit to the taking of a DNA sample for inclusion in a state administered DNA data bank used to assist in law enforcement investigations. The defendant appeals, following our grant of certification,[2] from the judgment of the Appellate Court affirming: the trial court's judgment granting the state permission to use reasonable physical force to obtain a DNA sample from the defendant; and the judgment of conviction, rendered after a jury trial, of one count of violating § 54-102g (g). See *State* v. *Drakes*, 143 Conn. App. 510, 519, 70 A.3d 1104 (2013). On appeal, the defendant contends that the Appellate Court: (1) erred in concluding that, prior to the amendment to § 54-102g in 2011 specifically authorizing the use of reasonable force to obtain a DNA sample; Public Acts 2011, No. 11-144, § 1 (P.A. 11-144); the trial court had the jurisdiction and authority to grant the state permission to use reasonable physical force to obtain a sample of the defendant's DNA; and (2) improperly concluded that the prosecution of the defendant pursuant to § 54-102g did not violate the defendant's right to due process; Conn. Const., art. I, §§ 8 and 9; or the double jeopardy clause of the federal constitution. U.S. Const., amend. V. After our review of the defendant's claims, we conclude that the Appellate Court properly resolved both issues and, therefore, affirm the judgment of the Appellate Court.

The following facts and procedural history are relevant to our resolution of the defendant's appeal. On April 18, 2005, the defendant pleaded guilty to one count of murder in violation of General Statutes § 53a-54a and one count of criminal possession of a firearm in violation of General Statutes (Rev. to 2003) § 53a-217. On April 20, 2005, the defendant was sentenced to thirty years incarceration. At the time of sentencing, the defendant was informed that, by virtue of his new status as an incarcerated felon, he would be required to provide a DNA sample to the Department of Correction (department) for inclusion in the state DNA data bank.

On December 3, 2009, department personnel requested that the defendant provide a DNA sample pursuant to § 54-102g (a). The defendant refused to do so. On December 28, 2009, department personnel again asked the defendant to provide a DNA sample. Once again, the defendant informed department personnel that he would not do so. On March 17, 2010, the department directed the defendant and nine other inmates who had previously refused sampling to provide a DNA sample in accordance with § 54-102g (a). The defendant again refused to submit to the taking of a sample and

told department personnel that if they wanted a sample of his DNA, they would have to get a court order.

On May 19, 2010, the state filed a motion in the trial court seeking permission to use reasonable physical force in order to obtain a DNA sample from the defendant and another inmate, Mark Banks,[3] who also had consistently refused to willingly provide a DNA sample. As authority for its motion, the state cited to § 54-102g. The defendant opposed the state's motion, arguing that § 54-102g did not permit the state to use reasonable force to obtain a DNA sample from an unwilling inmate and that the only remedy available to the state was to prosecute him for failure to provide a blood or other biological sample for DNA analysis under § 54-102g (g).[4] On February 8, 2011, the trial court issued a memorandum of decision rejecting the defendant's claims and authorizing the state to implement reasonable physical force to obtain a DNA sample from the defendant. The trial court determined that the statute inherently provided the state with the authority to use reasonable force, because allowing individuals subject to § 54-102g to refuse sampling outright would substantially frustrate the legislative goal in establishing a DNA data bank. See General Statutes (Rev. to 2009) § 54-102g (f) (sample to be submitted for DNA analysis, and identification characteristics of profile resulting from such analysis shall be stored in DNA data bank). The defendant appealed from the trial court's decision.

On June 9, 2010, while the state's motion was pending before the trial court, the defendant was charged with a violation of § 54-102g (g) for his failure to submit to the taking of a blood or other biological sample for DNA analysis. On December 16, 2010, the defendant moved to dismiss the charge, arguing that it violated his due process rights and the constitutional prohibition against double jeopardy. On January 4, 2011, the trial court held a hearing on the defendant's motion at which the defendant argued that submitting a DNA sample was a punishment and that it thereby violated the double jeopardy clause by subjecting him to additional punishment for his original crimes. In response, the state argued that § 54-102g is not a punitive sanction and that there was no double jeopardy violation present under the test set forth in the United States Supreme Court's decision in *Blockburger* v. *United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932) ("the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not"). The trial court denied the defendant's motion, noting that § 54-102g is not a punishment and that the defendant was not being prosecuted in connection with his underlying crimes, but for his new act of not complying with the statutory duty to submit to the taking of a DNA sample. The defendant thereafter was tried before a jury and found guilty of one count of refusing to provide a DNA sample.

The defendant was sentenced to one year incarceration, to be served consecutively with his existing sentence. The defendant filed a separate appeal from the judgment of conviction.

The Appellate Court considered the defendant's consolidated appeals and upheld both the trial court's grant of the state's motion for permission to use reasonable physical force to acquire a DNA sample from the defendant and the defendant's conviction under § 54-102g (g) for refusing to submit to the taking of a DNA sample. *State* v. *Drakes*, supra, 143 Conn. App. 512. On appeal to the Appellate Court, the defendant argued that the trial court lacked subject matter jurisdiction to entertain the state's motion, and that it improperly determined that § 54-102g authorized the use of reasonable force to obtain a DNA sample from a resistant inmate. Id., 515. The Appellate Court, fully adopting the reasoning of its companion decision in *State* v. *Banks*, 143 Conn. App. 485, 492–508, 71 A.3d 582 (2013),[5] held that the trial court properly had jurisdiction to consider and grant the motion, and that § 54-102g authorized the use of reasonable force. *State* v. *Drakes*, supra, 516. The defendant also argued that his prosecution and conviction under § 54-102g violated the constitutional guarantee of due process and the prohibition against double jeopardy. Id., 518. The Appellate Court rejected the defendant's argument, reasoning that § 54-102g is regulatory, not punitive, in nature, and that the defendant's prosecution was for the new act of refusing to submit to the taking of a DNA sample and was unrelated to the criminal conduct that provided the basis for his original conviction. Id., 519. We subsequently granted the defendant's petition for certification to appeal. See footnote 2 of this opinion.

I

The defendant first argues that the Appellate Court incorrectly determined that the trial court had subject matter jurisdiction to consider and ultimately grant the state's motion for permission to use reasonable physical force as a means of obtaining a DNA sample. Likewise, the defendant contends that prior to the legislature's 2011 amendment to § 54-102g, which expressly authorized the department to use reasonable physical force to obtain DNA samples from unwilling inmates, there was no authority for the trial court's granting of the state's motion to use such force. See P.A. 11-144. In response, the state posits that because § 54-102g is regulatory, not penal, in nature, the trial court had subject matter jurisdiction to consider its motion. The state further contends that § 54-102g provides inherent authority to the department to use reasonable physical force, as a conclusion to the contrary would substantially frustrate the objectives of the statutory scheme. We agree with the state and conclude that the Appellate Court properly resolved both questions.

We observe at the outset that the jurisdictional and statutory claims that the defendant raises in the present case are essentially identical to those raised and addressed in the companion case to the defendant's appeal that we decided today. See *State* v. *Banks*, 321 Conn. 821,     A.3d     (2016). Our examination of these same issues in *Banks* thoroughly resolves the claims of the defendant in the present case and there is nothing in this case that would mandate a different result than that which we reached in *Banks*. Id., 830–844. Accordingly, we adopt the reasoning and conclusions of that opinion herein. See *Minnesota Methane, LLC* v. *Dept. of Public Utility Control*, 283 Conn. 700, 712, 931 A.2d 177 (2007); *Rocque* v. *Mellon*, 275 Conn. 161, 166–67, 881 A.2d 972 (2005), cert. denied, 547 U.S. 1111, 126 S. Ct. 1913, 164 L. Ed. 2d 664 (2006). We therefore affirm the judgment of the Appellate Court in regard to the defendant's claims that the trial court was without subject matter jurisdiction and that § 54-102g did not authorize the use of reasonable physical force to ensure compliance.

## II

The defendant also argues that the Appellate Court improperly rejected his claim that his conviction for failure to submit to the taking of a blood or other biological sample for DNA analysis in violation of § 54-102g (g) infringes upon his due process rights and violates the federal and state constitutional prohibitions against double jeopardy. We disagree with the defendant's claim and affirm the judgment of the Appellate Court.

The fifth amendment to the United States constitution provides in relevant part: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . . ." Although our state constitution does not contain an explicit prohibition on double jeopardy, it is well settled that "the due process and personal liberty guarantees provided by article first, §§ 8 and 9, of the Connecticut constitution have been held to encompass the protection against double jeopardy." (Internal quotation marks omitted.) *State* v. *Kasprzyk*, 255 Conn. 186, 192, 763 A.2d 655 (2001). The protection that the state constitution provides against double jeopardy is "coextensive with that provided by the constitution of the United States." Id., 191–92. Specifically, the prohibition against double jeopardy ensures that a defendant will not be prosecuted a second time for the same offense following either an acquittal or a conviction, and also ensures that a defendant will not be subjected to multiple punishments for the same offense. *Whalen* v. *United States*, 445 U.S. 684, 688, 100 S. Ct. 1432, 63 L. Ed. 2d 715 (1980); *State* v. *Alexander*, 269 Conn. 107, 120, 847 A.2d 970 (2004). The test to determine whether a defendant is being subjected to multiple punishments for the same act under two "distinct statutory provisions" is "whether each [statutory] provision

requires proof of a fact which the other does not." *Blockburger* v. *United States*, supra, 284 U.S. 304.

As the Appellate Court noted, the defendant's double jeopardy claim is "misguided for more than one reason." *State* v. *Drakes*, supra, 143 Conn. App. 519. First, as the Appellate Court and the trial court concluded, and as we concluded today in our decision in *State* v. *Banks*, supra, 321 Conn. 830–837, under our decision in *State* v. *Waterman*, 264 Conn. 484, 492–93, 825 A.2d 63 (2003), and the factors articulated in *Kennedy* v. *Mendoza-Martinez*, 372 U.S. 144, 168–69, 83 S. Ct. 554, 9 L. Ed. 2d 644 (1963), § 54-102g is a regulatory statute and does not impose any penalty on those subject to its requirements. Accordingly, requiring the defendant to submit to the taking of a DNA sample for inclusion in the DNA data bank does not constitute an additional punishment for his underlying crimes because the requirement is not itself a punishment.

Second, the defendant's prosecution and conviction of a violation of § 54-102g (g) is completely unrelated to his conviction of the crimes of murder and criminal possession of a firearm in 2005. That is, the defendant's actions that formed the basis for his initial criminal conviction are distinct and separate from the conduct that formed the basis for his conviction of § 54-102g (g). The defendant's conviction at issue in the present case was due to his refusal, following his original criminal conviction and subsequent incarceration, to provide a DNA sample as required by § 54-102g. Thus, the defendant's prosecution and conviction were premised on conduct separate from his initial conviction, and the defendant's conviction for violating § 54-102g (g) in no way affects his prior sentence. Accordingly, we conclude that the defendant cannot prevail on his double jeopardy claim, and we therefore affirm the judgment of conviction.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

[1] All references herein to § 54-102g are to the 2009 revision of the statute unless otherwise indicated.

[2] We granted the defendant's petition for certification limited to the following issues: (1) whether the Appellate Court properly determined that prior to the passage of No. 11-144 of the 2011 Public Acts, which amended § 54-102g, it was permissible for the trial court to grant the state permission to use reasonable force to obtain a DNA sample; and (2) whether the Appellate Court properly determined that the prosecution of the defendant for failing to provide a DNA sample under § 54-102g (g) did not violate due process and the prohibition against double jeopardy. We note that our initial grant of certification; see *State* v. *Drakes*, 310 Conn. 951, 81 A.3d 1179 (2013); did not accurately reflect the issues raised in the defendant's present appeal. See *State* v. *Dort*, 315 Conn. 151, 169, 106 A.3d 277 (2014) ("courts must, when necessary, reformulate the certified question to conform to the issue actually presented to and decided in the appeal to the Appellate Court" [internal quotation marks omitted]). At oral argument before this court, defense counsel clarified that the defendant was not asserting an ex post facto or retroactivity claim.

[3] Banks' appeal, also decided today, raises substantially similar issues to those presented by the defendant in the present case. See *State* v. *Banks*, 321 Conn. 821,     A.3d     (2016).

[4] At the time of the events underlying this appeal, an individual who refused to submit to the taking of a DNA sample as required by § 54-102g (a) was guilty of a class A misdemeanor. See General Statutes (Rev. to 2009) § 54-102g (g). The legislature subsequently amended the statute to make such refusal a class D felony, effective October 1, 2010. Public Acts 2010, No. 10-102, § 2; see General Statutes (Rev. to 2011) § 54-102g (g).

[5] See footnote 3 of this opinion.