******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* MARK BANKS
(SC 19246)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and Vertefeuille, Js.

*Argued January 28—officially released July 5, 2016*

*Daniel J. Foster*, assigned counsel, for the appellant (defendant).

*Michael Gailor*, executive assistant state's attorney, with whom, on the brief, was *Gail P. Hardy*, state's attorney, for the appellee (state).

*Opinion*

ESPINOSA, J. In this certified appeal[1] we consider whether the Appellate Court properly resolved a series of claims that the defendant, Mark Banks, raises in connection with General Statutes (Rev. to 2009) § 54-102g,[2] which authorizes the Commissioner of Correction to collect DNA samples from currently incarcerated felons in order to maintain a DNA data bank to assist in criminal investigations. The defendant appeals, following our grant of certification, from the judgment of the Appellate Court affirming both the trial court's judgment granting the state permission to use reasonable physical force to obtain a DNA sample from the defendant and the judgment of conviction rendered following the defendant's refusal to submit to the taking of a blood or other biological sample for DNA analysis in violation of § 54-102g (g). *State* v. *Banks*, 143 Conn. App. 485, 487–88, 71 A.3d 582 (2013). The defendant contends that the Appellate Court: (1) improperly concluded that the trial court had authority to grant the state permission to use reasonable physical force in obtaining a DNA sample from him prior to the 2011 amendment to § 54-102g that incorporated a provision authorizing the state to use such force; see Public Acts 2011, No. 11-144, § 1 (P.A. 11-144); and (2) incorrectly determined that § 54-102g, as applied to the defendant, did not violate his due process rights and the ex post facto clause of the federal constitution. See U.S. Const., art. I, § 10. We conclude that the Appellate Court properly resolved both of the defendant's claims and therefore affirm the judgment of the Appellate Court.

The following facts and procedural history are relevant to the resolution of this appeal. In 1997, following a jury trial, the defendant was convicted of four counts of robbery in the first degree in violation of General Statutes § 53a-134 (a) (4), four counts of kidnapping in the first degree in violation of General Statutes § 53a-92, and two counts of criminal possession of a pistol or revolver in violation of General Statutes (Rev. to 1995) § 53a-217c for robberies committed in 1995. See *State* v. *Banks*, 59 Conn. App. 112, 113, 755 A.2d 951, cert. denied, 254 Conn. 950, 762 A.2d 904 (2000). On December 19, 1997, the trial court sentenced the defendant to fifteen years incarceration to run consecutively with a sentence the defendant was already serving from a prior conviction. The defendant has remained incarcerated since his 1997 convictions.

In his brief to this court, the defendant states that on December 8 and 29, 2009, personnel from the Department of Correction (department) instructed him to submit to the taking of a DNA sample pursuant to § 54-102g (a), but that he refused to comply. On March 17, 2010, department personnel again instructed the defendant and nine other inmates to provide DNA samples in accordance with the statute. The defendant remained

steadfast in his refusal to submit to the taking of a DNA sample.

On May 19, 2010, the state filed a motion in the trial court seeking permission to use reasonable physical force to collect a DNA sample from the defendant and a fellow inmate, Roosevelt Drakes,[3] who had likewise refused to submit a sample. The state cited § 54-102g as the authority for its motion. The defendant opposed the state's motion, arguing that if he refused to submit a DNA sample for inclusion in the DNA data bank, the only recourse available to the state was to prosecute him pursuant to § 54-102g (g) for refusal to provide a blood or other biological sample for DNA analysis.[4] The defendant further argued that he was not required to submit a DNA sample because at the time of his convictions in 1997, General Statutes (Rev. to 1997) § 54-102g applied only to those persons convicted of certain sex offenses and did not apply to incarcerated felons, such as the defendant, until the legislature amended the statute in 2003. See Public Acts 2003, No. 03-242, § 1 (P.A. 03-242). Accordingly, the defendant claimed that requiring him to provide a DNA sample would constitute an added punishment to his original sentence and run afoul of the ex post facto clause.

On February 8, 2011, the trial court, *Mullarkey, J.*, issued a written memorandum of decision rejecting the defendant's claims and granting the state's motion for permission to use reasonable physical force to collect a DNA sample from the defendant. The trial court determined that submitting to the taking of a DNA sample for the purposes of § 54-102g was a nonpunitive, regulatory measure that did not affect the defendant's original 1997 sentence and, therefore, that the trial court had subject matter jurisdiction over the state's motion. Likewise, because the trial court determined that § 54-102g is regulatory in nature, it concluded that the statute did not run awry of the ex post facto clause. Additionally, after examining the text and legislative history of § 54-102g, the court determined that the statute necessarily included the option of enforcing compliance through reasonable force, because allowing incarcerated felons to simply refuse to provide DNA samples would substantially frustrate the legislature's goal of creating a comprehensive DNA data bank to aid in criminal investigations. The defendant appealed to the Appellate Court from the trial court's decision.[5]

Subsequently, the defendant was charged via a substitute information with refusal to submit to the taking of a blood or biological sample for DNA analysis in violation of § 54-102g (g) for his March 17, 2010 refusal. The defendant moved to dismiss the charge and, at a hearing before the trial court, *Carbonneau, J.*, presented similar arguments to those he previously presented in opposition to the state's motion to use physical force, namely, that application of the statute would violate the ex post

facto clause as applied to him. The trial court adopted the reasoning of Judge Mullarkey in his memorandum of decision, concluded that the taking of a DNA sample was not a penalty and denied the defendant's motion to dismiss. Following a bench trial, the defendant was found guilty and sentenced to one year incarceration, consecutive to his existing sentences. The defendant filed a separate appeal to the Appellate Court from the judgment of conviction.

The Appellate Court considered the defendant's consolidated appeals and ultimately upheld both the defendant's conviction and the trial court's grant of the state's motion for permission to use reasonable physical force in obtaining a DNA sample from the defendant. *State* v. *Banks*, supra, 143 Conn. App. 485, 487–88. The defendant argued that: (1) the trial court lacked subject matter jurisdiction to consider the state's motion; (2) § 54-102g, as applied to him, violated his due process rights and the ex post facto clause; (3) the legislature, although it had amended § 54-102g in 2011 to authorize the use of reasonable force to obtain a DNA sample; P.A. 11-144; did not intend that amendment to have retroactive effect; and (4) prior to 2011, § 54-102g did not authorize the department to use reasonable force. *State* v. *Banks*, supra, 492, 508. The Appellate Court, largely adopting the reasoning of the trial court's memorandum of decision, concluded that § 54-102g is regulatory rather than punitive in nature and, therefore, that the trial court had jurisdiction to consider the state's motion and that application of the statute to the defendant did not violate his due process rights or contravene the ex post facto clause. Id., 499, 508–10. In analyzing the text and history of § 54-102g, the Appellate Court determined that the statute was not applied retroactively to the defendant and that, as the trial court concluded, the statute authorized the use of reasonable force to obtain a DNA sample from those who refused to willingly submit one. Id., 507. We thereafter granted the defendant's petition for certification to appeal. See footnote 1 of this opinion.

Prior to addressing the defendant's substantive claims, we provide an overview of the history of the statutory scheme which underlies the defendant's claims. The current revision of § 54-102g (b) requires DNA samples to be collected from all persons convicted of a felony, among others. When initially enacted in 1994, however, the statute only required the collection of DNA samples from persons convicted of certain sex offenses. Public Acts 1994, No. 94-246, § 1; see General Statutes (Rev. to 1995) § 54-102g. The statute was further amended in 1999 to extend the DNA collection requirements to individuals who had committed a criminal offense against a victim who was a minor. Public Acts 1999, No. 99-183, § 1. In 2003, the legislature expanded the scope of the statute to require all incarcerated felons to submit a DNA sample for inclusion in

the state DNA data bank. See P.A. 03-242, § 1. The 2003 amendment broadening the category of those subject to § 54-102g is the source of the defendant's present appeal.[6]

I

A

We first address the defendant's claim that the Appellate Court incorrectly concluded that the trial court properly granted the state's motion for permission to use reasonable physical force as a means of obtaining a sample of the defendant's DNA. *State* v. *Banks*, supra, 143 Conn. App. 507. The defendant contends that § 54-102g is penal rather than regulatory in nature and, therefore, that the trial court was without jurisdiction because the defendant was already serving the sentences for his underlying criminal convictions. The state avers that § 54-102g is not punitive in nature and that the trial court properly had jurisdiction to consider the state's motion given that the court's actions would not affect the defendant's original sentences. We agree with the state.

In the most fundamental sense, subject matter jurisdiction "involves the authority of a court to adjudicate the type of controversy presented by the action before it." (Internal quotation marks omitted.) *State* v. *Fowlkes*, 283 Conn. 735, 739, 930 A.2d 644 (2007). It is well settled that, in criminal matters, "[t]he jurisdiction of the sentencing court terminates when the sentence is put into effect, and that court may no longer take any action *affecting the sentence* unless it has been expressly authorized to act." (Emphasis in original; internal quotation marks omitted.) *State* v. *Waterman*, 264 Conn. 484, 491, 825 A.2d 63 (2003). When determining whether a trial court properly had subject matter jurisdiction over an action, we recognize that "every presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) *State* v. *Fowlkes*, supra, 739. We exercise plenary review over questions of a court's subject matter jurisdiction. Id., 738.

The critical question in determining whether a court may take action affecting a defendant's sentence following its imposition is whether the requested action is punitive in nature. If the requested action "is not punitive in nature, then a defendant's sentence is not affected, and the trial court has jurisdiction to take that action. If it is punitive, then a defendant's sentence *is* affected, and the trial court lacks jurisdiction to take that action." (Emphasis in original.) Id., 740. In *State* v. *Waterman*, supra, 264 Conn. 484, we addressed a similar jurisdictional claim to that raised by the defendant in the present case. In that case, the defendant challenged the jurisdiction of the trial court to make a finding following the defendant's sentencing that he must register as a sex offender pursuant to General

Statutes § 54-251, a provision in Connecticut's version of Megan's Law, General Statutes § 54-250 et seq. *State* v. *Waterman*, supra, 488. The defendant argued that registering as a sex offender was a punitive measure and that the court was without jurisdiction to order him to register, as he had already begun serving the sentence for his underlying convictions. Id., 489. We employed a two part test to determine whether the requirements of a statute are punitive in nature: "[U]nder the first part of the test, the court examine[s] whether the legislature ha[s] intended the statute [under consideration] to be criminal or civil, in other words, punitive in law. . . . Under the second part of the test, the . . . court consider[s] whether, even if not punitive in law, the statute [is] nevertheless punitive in fact, that is, whether the statute [is] so punitive in fact that it [cannot] be seen as civil in nature." (Internal quotation marks omitted.) *State* v. *Fowlkes*, supra, 283 Conn. 741; *State* v. *Waterman*, supra, 492–93; see also *State* v. *Kelly*, 256 Conn. 23, 92, 770 A.2d 908 (2001). We determined that the requirements of Megan's Law were ministerial only; *State* v. *Waterman*, supra, 497; and relied on the conclusions of the United States District Court for the District of Connecticut in a previous challenge to the same law that neither the text of the statute nor the legislative history evinced a punitive purpose. Id., 493–94; see *Doe* v. *Lee*, 132 F. Supp. 2d 57, 67–68 (D. Conn.), aff'd sub nom. *Doe* v. *Dept. of Public Safety ex rel. Lee*, 271 F.3d 38 (2d Cir. 2001), rev'd on other grounds sub nom. *Dept. of Public Safety* v. *Doe*, 538 U.S. 1, 123 S. Ct. 1160, 155 L. Ed. 2d 98 (2003). Furthermore, the statute did not necessitate modifying, opening, or correcting the defendant's original sentence in order to ensure the defendant's compliance with the registration requirements. *State* v. *Waterman*, supra, 497. We therefore concluded that the registration requirements of Megan's Law are regulatory in nature and not punitive. Id., 489. Accordingly, we determined that the trial court had jurisdiction to order the defendant's registration as the requirement did not affect the defendant's original sentence. Id., 498.

Like the similar claim in *Waterman*, the defendant's argument that the trial court did not have jurisdiction to grant the state's motion for permission to use reasonable force because § 54-102g constitutes a penalty must fail. After our review of § 54-102g, we conclude that the Appellate Court properly determined that the requirements in the statute to provide DNA samples are not punitive in nature and, therefore, the trial court properly had subject matter jurisdiction to consider the state's motion.

Under the first part of our analysis, we examine the statutory text and conclude that the legislature did not intend for DNA collection to be punitive in the context of the statutory scheme that encompasses § 54-102g. In determining the legislative purpose of a statute, we

employ the familiar rules of statutory construction. See *Lieberman* v. *Aronow*, 319 Conn. 748, 756–57, 127 A.3d 970 (2015); *In re Tyriq T.*, 313 Conn. 99, 104–105, 96 A.3d 494 (2014). Our analysis of § 54-102g is therefore guided by General Statutes § 1-2z and standard principles of statutory construction. As both the trial court and the Appellate Court observed, § 54-102g (f) demonstrates that the purpose of the statute is to further the nonpunitive goal of maintaining a DNA data bank to assist in criminal investigations: "The identification characteristics of the profile resulting from the DNA analysis shall be stored and maintained . . . in a DNA data bank and shall be made available only as provided in section 54-102j." General Statutes (Rev. to 2009) § 54-102g (f). We agree that the overall purpose of the statute is not to punish those convicted of crimes by requiring them to submit a DNA sample, but to use DNA as a means of aiding law enforcement investigations. See *Maryland* v. *King*, U.S. , 133 S. Ct. 1958, 1966, 186 L. Ed. 2d 1 (2013) ("[L]aw enforcement, the defense bar, and the courts have acknowledged DNA testing's unparalleled ability both to exonerate the wrongly convicted and to identify the guilty. It has the potential to significantly improve both the criminal justice system and police investigative practices." [Internal quotation marks omitted.]).

Indeed, the other provisions of the statutory scheme demonstrate that the collection of DNA samples is for regulatory rather than punitive purposes. For example, the statutory scheme contains provisions regulating: the manner in which DNA samples are collected; General Statutes § 54-102h; the manner in which the analysis of DNA samples is to be conducted; General Statutes § 54-102i; and the legitimate purposes for which information in the DNA data bank may be used. General Statutes § 54-102j. Likewise, the statutory scheme contains provisions that: outline penalties for misuse of information in the DNA data bank; General Statutes § 54-102k; provide for the destruction of DNA data bank information upon a person's exoneration; General Statutes § 54-102*l*; and create a DNA Data Bank Oversight Panel charged with safeguarding the information in the DNA data bank and the privacy of individuals registered therein. General Statutes § 54-102m. All of these provisions further the regulatory purpose and ensure that the DNA data bank is used only in accordance with its proper purpose of assisting in criminal investigations. Notably, all fifty states have enacted statutes similar to Connecticut's that require convicted felons to submit a DNA sample in order to aid in criminal investigations. *Maryland* v. *King*, supra, 133 S. Ct. 1968. In challenges to those statutory schemes, our sister courts have regularly held that the collection of DNA in this context is regulatory and not punitive.[7] Accordingly, § 54-102g is not punitive in law.

Although we conclude that § 54-102g is not punitive in

law, under the second part of our analysis, we consider whether the statute may be " 'punitive in fact' " if the punitive effect of the statute is so substantial that it swallows the regulatory or civil purpose of the statute. *State* v. *Waterman*, supra, 264 Conn. 492–93. When inquiring whether a statute is actually punitive in fact, we examine the factors first outlined by the United States Supreme Court in *Kennedy* v. *Mendoza-Martinez*, 372 U.S. 144, 168–69, 83 S. Ct. 554, 9 L. Ed. 2d 644 (1963); see *State* v. *Alexander*, 269 Conn. 107, 118, 847 A.2d 970 (2004). These factors include whether the challenged action "has historically been regarded as punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned . . . ." (Footnotes omitted.) *Kennedy* v. *Mendoza-Martinez*, supra, 168–69. We recognize that these factors "are all relevant to the inquiry, and may often point in differing directions." Id., 169. Additionally, "[s]ometimes one factor will be considered nearly dispositive of punitiveness in fact, while sometimes another factor will be crucial to a finding of nonpunitiveness." (Internal quotation marks omitted.) *State* v. *Kelly*, supra, 256 Conn. 93.

In concluding that § 54-102g is not punitive in fact, the Appellate Court rejected the defendant's claim that because refusal to submit a DNA sample can result in a criminal prosecution pursuant to § 54-102g (g) the statute is necessarily punitive in its effect. *State* v. *Banks*, supra, 143 Conn. App. 498–99. We agree with the Appellate Court's determination that a statutory provision that subjects a person to prosecution for noncompliance does not automatically convert an otherwise regulatory statutory scheme into a penal statute. At the time the defendant in the present case was charged, § 54-102g (g) provided that any person who failed to submit to the taking of a DNA sample was guilty of a class A misdemeanor. See footnote 4 of this opinion. Megan's Law contains several provisions similar to § 54-102g (g) whereby a person who is required to register as a sex offender, yet fails to do so, is guilty of a class D felony. See General Statutes §§ 54-251 (e), 54-252 (d), 54-253 (e) and 54-254 (b). In *State* v. *Kelly*, supra, 256 Conn. 94, we concluded that the registration requirements of Megan's Law, despite the existence of penalty provisions, were regulatory rather than punitive in nature. The penalty for failure to submit a DNA sample is no greater than the penalty for failure to register as a sex offender and the defendant offers no reason as to why that penalty is any more burdensome in this context. Accordingly, consistent with our decision in *Kelly*, the penalty provision of § 54-102g (g) does not

render the entire statutory scheme punitive in fact.

Our examination of the other *Mendoza-Martinez* factors does not lead us to the conclusion that § 54-102g is punitive in fact. We are unaware of any tradition that considers the submission of a DNA sample to be a historically recognized punishment and the defendant offers no support for such a proposition.[8] Likewise, requiring convicted felons to submit to the taking of a DNA sample in no way furthers the retributive or deterrent goals of punishment for their underlying crimes. The purpose of collecting DNA samples is not to punish felons for their underlying crimes or to deter future criminals, but to bolster the usefulness of the DNA data bank in criminal investigations.[9] The statutory scheme furthers this purpose by only imposing a minimal inconvenience on those who must submit DNA samples and thereafter safeguards the interests of those in the data bank via the DNA Data Bank Oversight Panel and the destruction of DNA records upon exoneration. The goals expressed in the statute and the operative statutory mechanisms by which they are to be carried out are inconsistent with the goals of punishment. We therefore conclude that the Appellate Court properly determined that § 54-102g is not punitive in fact under the factors set forth in *Mendoza-Martinez*. As the statute is neither punitive in law or in fact and therefore does not affect the defendant's original sentences, the Appellate Court was correct in its conclusion that the trial court properly had subject matter jurisdiction over the state's motion seeking permission to use reasonable physical force to obtain a DNA sample from the defendant.

B

Although the trial court was vested with jurisdiction to consider the state's motion, we must next determine whether the trial court properly granted the state's motion for permission to use reasonable physical force. At the time of the state's motion, § 54-102g contained no provisions explicitly outlining the remedies available to the department should an incarcerated felon refuse to willingly submit to the taking of a DNA sample. The legislature subsequently amended the statute to specifically allow department personnel to use reasonable force to obtain samples from those who refuse to do so. See P.A. 11-144. Thus, we must determine whether, prior to the legislature's amendment, it was permissible for the trial court to authorize the state to use reasonable physical force to obtain a sample of the defendant's DNA.

In its memorandum of decision on the state's motion, the trial court initially concluded that the plain meaning of § 54-102g is clear in that the DNA sample requirement is mandatory. The court observed, however, that at that point in time, the statute did not expressly provide for the use of reasonable force in the event of an individual's refusal to submit a sample. The defendant argued

that the statute's silence evinced an inability to implement force as a means of obtaining the sample whereas the state argued that if the use of reasonable force were not permissible then the entire purpose of the statute would be rendered meaningless by the ability of inmates to refuse sampling. Determining that both interpretations were plausible, the trial court concluded that § 54-102g is ambiguous within the meaning of § 1-2z and proceeded to review the relevant legislative history, which provided no clarity on the use of reasonable force in this context. The trial court ultimately determined that the use of reasonable force to obtain a DNA sample was inherent in the statute because: (1) the legislature's silence on the topic could not be construed as evidence of legislative intent to the contrary; (2) it was department policy to seek a court order authorizing reasonable force in the event of an individual's refusal and the legislature had not addressed that question despite making interim revisions to the statute; and (3) the overall purpose of the statute would be substantially frustrated otherwise. Accordingly, the trial court granted the state's motion.

The Appellate Court affirmed the trial court's decision, holding that the department's ability to use reasonable force to obtain a DNA sample is implicit in the statute as its fundamental purpose would be subverted otherwise. *State* v. *Banks*, supra, 143 Conn. App. 505–507. Furthermore, the Appellate Court observed that the legislature had since amended the statute to permit the use of reasonable force, thereby clarifying the meaning of the original statute. Id., 507–508; see P.A. 11-144, § 1. On appeal before this court, the defendant argues that the Appellate Court erred in its interpretation of the statute, and that, prior to its 2011 amendment, § 54-102g contained no authority, implicit or otherwise, to use reasonable force to obtain a DNA sample. The state argues in response that the Appellate Court properly upheld the trial court's reading of the statute and that to hold otherwise would severely undercut the legislature's goals in enacting § 54-102g. We disagree with the defendant's argument and conclude that the Appellate Court correctly upheld the trial court's interpretation of the statute.

As the defendant's claim presents us with a question of statutory interpretation, we are guided by § 1-2z and the standard precepts of statutory construction. See *Lieberman* v. *Aranow*, supra, 319 Conn. 756–58. General Statutes (Rev. to 2009) § 54-102g (a) provides in relevant part that "[a]ny person who has been convicted of a . . . felony . . . shall, prior to release from custody and at such time as the [C]ommissioner [of Correction] may specify, submit to the taking of a blood or other biological sample for DNA . . . analysis . . . ." Although the statute was, at the time of the state's motion, silent on the question of the department's use of reasonable force to obtain a DNA sample, the state

contends that the legislature's use of the word "shall" in the language of the statute denotes a mandatory duty on the part of an individual to submit to the taking of a DNA sample upon the request of the department. We recognize that "the legislature's use of the word 'shall' suggests a mandatory command," and yet "the word 'shall' is not [necessarily] dispositive on the issue of whether a statute is mandatory." *Southwick at Milford Condominium Assn., Inc.* v. *523 Wheelers Farm Road, Milford, LLC*, 294 Conn. 311, 319–20, 984 A.2d 676 (2009). Thus, the proper question in determining whether a statute is mandatory is "whether the prescribed mode of action is the essence of the thing to be accomplished, or in other words, whether it relates to a matter of substance or a matter of convenience." (Internal quotation marks omitted.) *United Illuminating Co.* v. *New Haven*, 240 Conn. 422, 465, 692 A.2d 742 (1997).

The use of the word "required" along with "shall" in the text of the statute seems to imply that submitting to the taking of a DNA sample is mandatory. More tellingly, the objective at the heart of § 54-102g is the DNA data bank, the creation and efficacy of which would be substantially impeded without the collection of DNA samples from those persons covered by the statute. Thus, the submission of DNA samples by convicted felons is certainly a matter of substance rather than one of mere convenience, as fulfillment of the statute's goals would be utterly hindered by an individual's refusal to submit a DNA sample. Although the plain language of the statute clearly suggests that § 54-102g imposes a mandatory obligation on an individual to submit to the taking of a DNA sample, the mandatory language of the statute does not address the crux of the defendant's claim, namely whether the statute authorizes the use of reasonable force to obtain a sample from an unwilling individual. Although we observe that "statutory silence does not necessarily equate to ambiguity"; (internal quotation marks omitted) *Hartford/Windsor Healthcare Properties, LLC* v. *Hartford*, 298 Conn. 191, 198, 3 A.3d 56 (2010); the state and the defendant offer vying interpretations of the statute in this regard. We therefore conclude, as the trial court and Appellate Court did, that the statute is ambiguous and that we must turn to its legislative history to aid in our analysis. See *State* v. *Banks*, supra, 143 Conn. App. 505.

Both the trial court and the Appellate Court, after reviewing the legislative history of § 54-102g, ultimately concluded that the history shed no light on the legislature's intentions as to the use of reasonable force to obtain a DNA sample. Id. After our own review of the relevant legislative history, we must agree with the conclusions of the trial court and the Appellate Court. The legislature never discussed in floor debates the question of using reasonable force as a means of obtaining a

DNA sample and, as a result, the discussions of the legislators on the statute offer no guidance to our present inquiry.

At first blush, the silence of the legislature during its debate on the statute appears to lend some support to the defendant's position that the silence of the statute militates against the use of reasonable force to obtain a DNA sample. It is well established, however, that when "we are left with silence on [an] issue . . . we do not determine legislative intent" from such silence. *State* v. *Kirsch*, 263 Conn. 390, 420, 820 A.2d 236 (2003). Additionally, the legislature's silence on the question of reasonable force during the 2003 amendment to § 54-102g was not the legislature's first or last word on the issue. See P.A. 03-242. In 2011, the legislature amended § 54-102g to allow the department to use reasonable force to obtain a DNA sample from an individual, such as the defendant, who refuses to willingly submit to the taking of a sample. See P.A. 11-144, § 1. This court recognizes that "an amendment which in effect construes and clarifies a prior statute must be accepted as the legislative declaration of the meaning of the original act." (Internal quotation marks omitted.) *Bhinder* v. *Sun Co.*, 263 Conn. 358, 368–69, 819 A.2d 822 (2003); *State* v. *State Employees' Review Board*, 239 Conn. 638, 648–49, 687 A.2d 134 (1997). Thus, the subsequent amendment demonstrates the legislature's acknowledgment that it would be necessary at times to use reasonable force in order to further the goals of the statute.

In the absence of any determinative legislative history on the statute, the Appellate Court focused on the fact that given the mandatory and substantive import of the DNA submission requirement, to permit individuals to refuse to comply with the statute at will would seriously defeat the statute's goal of creating a DNA data bank to assist in criminal investigations. *State* v. *Banks*, supra, 143 Conn. App. 506–507. We agree with the Appellate Court's determination that, prior to the 2011 amendment, the use of reasonable force to obtain a DNA sample from an unwilling individual was "inherent" in § 54-102g. To conclude otherwise would result in absolute frustration of the legislature's objective in establishing and maintaining a DNA data bank. We are mindful that reviewing courts should not construe statutes "in disregard of their context and in frustration of the obvious legislative intent" or in a manner "that is hostile to an evident legislative purpose . . . or in a way that is contrary to common sense." (Citations omitted; internal quotation marks omitted.) *State* v. *Skakel*, 276 Conn. 633, 678, 888 A.2d 985, cert. denied, 549 U.S. 1030, 127 S. Ct. 578, 166 L. Ed. 2d 428 (2006).

If we were to accept the defendant's position, those persons required to submit a DNA sample under the statute would be free to openly refuse and § 54-102g would be reduced to a nullity and its objectives resound-

ingly defeated. Although, as the defendant observes, § 54-102g (g) subjects a person to further criminal prosecution for refusal to submit a DNA sample, such prosecution does not, as the defendant's case itself demonstrates, remedy the fact that the ultimate objective of § 54-102g has been thwarted. For the statute to be effective, it must necessarily allow for the department to use reasonable force in those instances where a person required to submit to the taking of a DNA sample refuses to do so. See *Rendelman* v. *Scott*, 378 Fed. Appx. 309, 313 (4th Cir. 2010) ("[T]he [s]tate's right to obtain [a] DNA sample from designated inmates must necessarily carry with it the right to use a reasonable degree of force that is sufficient to ensure compliance. Otherwise, the [s]tate's right can be rendered meaningless by an inmate who refuses to grant permission . . . .").

Furthermore, at the time of the state's motion, the department had a policy in place that when an inmate subject to § 54-102g refused to provide a DNA sample, department personnel were to direct the inmate to complete a "DNA Advisement/Refusal Form" (refusal form) that informed the inmate that refusal to submit a sample pursuant to the statute was a prosecutable offense. See Department of Correction, Felony DNA Policy (October 1, 2010), available at www.ct.gov/doc/lib/doc/pdf/Policy DNAFelony.pdf (last visited May 6, 2016). In its memorandum of decision, the trial court observed that the refusal form also advised an inmate that if the inmate continued to refuse to provide a sample, the department could seek a court order to use reasonable force in order to ensure compliance with the statute. The court noted that, despite the existence of such a policy, the legislature had not taken any action in subsequent amendments to disavow the state's policy of seeking the authorization of reasonable force should an individual refuse to submit to sampling. See generally *Connecticut Light & Power Co.* v. *Public Utilities Control Authority*, 176 Conn. 191, 198, 405 A.2d 638 (1978). Indeed, the legislature's 2011 amendment took the opposite course of action by explicitly amending the statute to permit the department to use reasonable force in those cases where an individual refuses to comply with the statute.

Accordingly, we agree with the conclusions of the Appellate Court. Given the statute's mandatory nature, its overall goals and objectives, and the legislature's subsequent amendment to the statute, it was proper for the trial court to grant the state's motion seeking permission to use reasonable physical force to obtain a DNA sample from the defendant.

## II

We next address the defendant's claim that the Appellate Court incorrectly determined that the application of § 54-102g to the defendant did not run afoul of the ex post facto clause of the federal constitution. The

defendant suggests that, because at the time of his underlying robbery related convictions in 1997, the statute applied only to those convicted of certain sex offenses, the requirement imposed by the 2003 amendment to § 54-102g that all convicted felons submit to the taking of a DNA sample violates the ex post facto clause and the defendant's due process rights. The state counters that the defendant's claim must fail due to the fact that providing a DNA sample is not a punitive sanction and therefore it does not contravene the ex post facto clause or the defendant's due process rights. We agree with the state that § 54-102g does not violate the federal constitution's bar on ex post facto laws.

The constitution of the United States, article one, § 10, provides in relevant part that "[n]o State shall . . . pass any . . . ex post facto Law . . . ." A law may be considered to violate the ex post facto clause if it "punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with [a] crime of any defense available according to law at the time when the act was committed . . . ." (Internal quotation marks omitted.) *Dobbert* v. *Florida*, 432 U.S. 282, 292, 97 S. Ct. 2290, 53 L. Ed. 2d 344 (1977); see also *State* v. *Faraday*, 268 Conn. 174, 199, 842 A.2d 567 (2004). In order to run awry of the ex post facto clause, a law "must be retrospective—that is, it must apply to events occurring before its enactment—and it must disadvantage the offender affected by it . . . ." (Internal quotation marks omitted.) *State* v. *Faraday*, supra, 195. It is well established that the "constitutional prohibition on ex post facto laws applies only to penal statutes which disadvantage the offender affected by them." *Collins* v. *Youngblood*, 497 U.S. 37, 41, 110 S. Ct. 2715, 111 L. Ed. 2d 30 (1990). Accordingly, "regulatory measures do not constitute punishment as proscribed by the ex post facto clause." *State* v. *Kelly*, supra, 256 Conn. 91. For the purposes of the ex post facto clause, our inquiry as to whether a statute is penal or not is the same as that set forth in part I A of this opinion and our decisions in *State* v. *Kelly*, supra, 92, and *State* v. *Waterman*, 264 Conn. 492–93.

The defendant first raised his ex post facto claim in a pro se supplemental memorandum at the time the state filed its motion seeking permission to use reasonable force against the defendant. The trial court rejected the defendant's claim on the ground that § 54-102g is not a penal statute and therefore does not fall within the purview of the ex post facto clause. When the defendant was subsequently prosecuted for violating § 54-102g, the defendant moved to dismiss on the basis of the ex post facto clause and the trial court denied the motion on the basis of the same reasoning it relied on in granting the state's previous motion to use reasonable physical force. On appeal, the Appellate Court concluded

that its determination that the statute was regulatory rather than punitive foreclosed the defendant's ex post facto claim and it therefore affirmed the trial court's judgments. *State* v. *Banks*, supra, 143 Conn. App. 509–10.

As the defendant notes, prior to the amendment in 2003 to § 54-102g, making all felons subject to the requirements of that statute; P.A. 03-242; § 54-102g applied only to those persons who had been convicted of particular sex offenses or who had committed an offense against a victim who was a minor. See General Statutes (Rev. to 2003) § 54-102g (a). Thus, at the time the defendant was convicted of his underlying offenses in 1997, he was not required to submit to the taking of a DNA sample for inclusion in the DNA data bank. The 2003 amendment, however, broadened the scope of the statute to include all persons convicted of a felony—a group that includes the defendant—to submit a biological sample for the purposes of the statute. See P.A. 03-242, § 1. Although this factual scenario would seemingly implicate the ex post facto clause, as we already extensively discussed in part I A of this opinion, § 54-102g is *not* a penal statute. The statute does not therefore implicate the ex post facto clause.[10] See *Collins* v. *Youngblood*, supra, 497 U.S. 41. Accordingly, the defendant cannot prevail on his ex post facto claim.

We observe that the courts of other jurisdictions that have addressed this issue have all arrived at the same conclusion, namely that statutes requiring convicts to submit DNA samples do not contravene the ex post facto clause, even when the underlying convictions precede the DNA collection statutes. See *In re DNA Ex Post Facto Issues*, 561 F.3d 294, 299 (4th Cir. 2009) ("the DNA-sample requirement did not violate the [e]x [p]ost [f]acto clause"); *United States* v. *Hook*, 471 F.3d 766, 776 (7th Cir. 2006), cert. denied, 549 U.S. 1343, 127 S. Ct. 2081, 167 L. Ed. 2d 771 (2007) ("the DNA [statute] does not operate retroactively to punish [the defendant] for his original crime, but rather any punishment that would ensue would be the result of new conduct, i.e., [the defendant's] failure to comply with the DNA [statute]"); *Gilbert* v. *Peters*, 55 F.3d 237, 238–39 (7th Cir. 1995) ("[b]oth federal and state courts have uniformly concluded that statutes which authorize collection of blood specimens to assist in law enforcement are not penal in nature"); *State* v. *Bain*, Docket No. 2008-286, 2009 WL 170109, *1 (Vt. January 14, 2009) ("federal and state courts across the country have uniformly held that statutes requiring prisoners or convicted felons to provide DNA samples do not violate the federal ex post facto clause, even when the convictions of the persons being asked to provide samples occurred before enactment of the statutes"); see also *United States* v. *Coccia*, 598 F.3d 293, 297–98 (6th Cir. 2010); *Johnson* v. *Quander*, 440 F.3d 489, 502–503 (D.C. Cir.), cert. denied, 549 U.S. 945, 127 S. Ct. 103, 166 L. Ed. 2d 255 (2006). This

court has also arrived at the same conclusion in the context of other statutory schemes. See *State* v. *Faraday*, supra, 268 Conn. 198–200 (defendant's revocation of probation did not implicate ex post facto clause because revocation was due to acts distinct and separate from defendant's underlying criminal convictions); *State* v. *Kelly*, supra, 256 Conn. 94 (requirement to register as sex offender is regulatory and does not violate ex post facto clause).

As the regulatory nature of § 54-102g does not raise any concerns in regard to the constitutional prohibition on ex post facto laws, the defendant's due process concerns stemming from the application of a supposed ex post facto law are therefore not an issue in the present case. Accordingly, we conclude that the Appellate Court properly upheld the trial court's determinations that § 54-102g does not violate the ex post facto clause.

The judgment of the Appellate Court is affirmed.

In this opinion PALMER, EVELEIGH, McDONALD and VERTEFEUILLE, Js., concurred.

[1] We granted the defendant's petition for certification, limited to the following issues: (1) "Did the Appellate Court correctly determine that the state may obtain a DNA sample from a felon in the custody of the Commissioner of Correction who was convicted of crimes prior to the enactment of General Statutes § 54-102g?"; and (2) "Did the Appellate Court correctly determine that prior to the passage of No. 11-144, § 1, of the 2011 Public Acts, which amended . . . § 54-102g, it was permissible for the trial court to grant the state permission to use reasonable physical force to obtain a DNA sample?" *State* v. *Banks*, 310 Conn. 951, 81 A.3d 1179 (2013).

[2] All references herein to § 54-102g are to the 2009 revision of the statute unless otherwise indicated.

[3] Drakes' appeal, also decided today, raises issues similar to those of the defendant in the present case. See *State* v. *Drakes*, 321 Conn. 857,     A.3d     (2016).

[4] At the time of the state's motion and the defendant's refusal in March, 2010, refusing to submit to the taking of a DNA sample was punishable as a class A misdemeanor. See General Statutes (Rev. to 2009) § 54-102g (g). The legislature subsequently amended the statute to make the refusal to submit to the taking of a DNA sample a class D felony, effective October 1, 2010. Public Acts 2010, No. 10-102, § 2; see General Statutes (Rev. to 2011) § 54-102g (g).

[5] The defendant, however, did not submit a sample of his DNA at this time. The trial court issued a stay delaying the enforcement of its decision pending the resolution of the defendant's appeal. See *State* v. *Banks*, supra, 143 Conn. App. 491.

[6] General Statutes (Rev. to 2009) § 54-102g provides in relevant part: "(a) Any person who has been convicted of a criminal offense against a victim who is a minor, a nonviolent sexual offense or a sexually violent offense . . . or a felony, and has been sentenced on that conviction to the custody of the Commissioner of Correction shall, prior to release from custody and at such time as the commissioner may specify, submit to the taking of a blood or other biological sample for DNA . . . analysis to determine identification characteristics specific to the person. . . ."

[7] See *United States* v. *Coccia*, 598 F.3d 293, 299 (6th Cir. 2010); *United States* v. *Hook*, 471 F.3d 766, 776 (7th Cir. 2006), cert. denied, 549 U.S. 1343, 127 S. Ct. 2081, 167 L. Ed. 2d 771 (2007); *Johnson* v. *Quander*, 440 F.3d 489, 502–503 (D.C. Cir.), cert. denied, 549 U.S. 945, 127 S. Ct. 103, 166 L. Ed. 2d 255 (2006); *Jones* v. *Murray*, 962 F.2d 302, 309 (4th Cir.), cert. denied, 506 U.S. 977, 113 S. Ct. 472, 121 L. Ed. 2d 378 (1992); *Kruger* v. *Erickson*, 875 F. Supp. 583, 589 (D. Minn. 1995), aff'd on other grounds, 77 F.3d 1071 (8th Cir. 1996); *People* v. *Travis*, 139 Cal. App. 4th 1271, 1295, 44 Cal. Rptr. 3d 177 (2006); *State* v. *Raines*, 383 Md. 1, 30, 857 A.2d 19 (2004); *Kellogg* v. *Travis*, 100 N.Y.2d 407, 410, 796 N.E.2d 467, 764 N.Y.S.2d 376 (2003); *Sanders* v. *Dept. of Corrections*, 379 S.C. 411, 422, 665 S.E.2d 411 (2008), cert. denied,

2009 S.C. LEXIS 480 (S.C. February 20, 2009); *State* v. *Bain*, Docket No. 2008-286, 2009 WL 170109, *1 (Vt. January 14, 2009).

[8] The defendant instead suggests that submitting a DNA sample should be recognized as a punishment because taking the sample would be a search and an intrusion under the fourth amendment to the federal constitution. There is no support, however, for the defendant's recasting of a fourth amendment search as a punishment. To the contrary, courts have held that actions generally are not punitive if they are minor and indirect in their effect. See *Smith* v. *Doe*, 538 U.S. 84, 99–100, 123 S. Ct. 1140, 155 L. Ed. 2d 164 (2003); *Hatton* v. *Bonner*, 356 F.3d 955, 963 (9th Cir. 2004). The common methods of obtaining a DNA sample—blood samples and buccal swabs— are both widely recognized as not being intrusive or excessively burdensome. See *Winston* v. *Lee*, 470 U.S. 753, 762, 105 S. Ct. 1611, 84 L. Ed. 2d 662 (1985) ("society's judgment [is] that blood tests do not constitute an unduly extensive imposition on an individual's personal privacy and bodily integrity"); *United States* v. *Amerson*, 483 F.3d 73, 84 n.11 (2d Cir.) ("a [buccal] swab can be taken in seconds without any discomfort"), cert. denied, 552 U.S. 1042, 128 S. Ct. 646, 169 L. Ed. 2d 515 (2007).

We observe that the defendant does not raise a separate fourth amendment claim in the present case. Rather, he argues only that the act of submitting a DNA sample should be considered a punishment because it would also constitute a search. At oral argument before this court, counsel for both the defendant and the state acknowledged that the defendant was not raising a fourth amendment claim in his appeal.

[9] The defendant challenges the Appellate Court's determination that "[g]iven the . . . importance of the objective to maintain a DNA data bank . . . to implement the purpose of the data bank, it must be comprehensive." *State* v. *Banks*, supra, 143 Conn. App. 505. The defendant argues that the requirements of § 54-102g must be punitive because if the goal of the statute is to create a comprehensive DNA data bank to assist in criminal investigations, then the only option for the legislature to effectuate its goal would have been to enact an Orwellian statutory scheme that required every citizen in Connecticut to submit a DNA sample rather than just those persons listed under the statute. The defendant's argument is meritless.

[10] Given our conclusion that § 54-102g does not fall within the ambit of the ex post facto clause by virtue of its nonpunitive nature, we need not address the defendant's claims regarding the retroactivity of the statute, which are premised on the defendant's theory that the statute is penal in nature.